UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,

              -v.-                                    08 Cr. 243 (KMK)

CONSTANCE G. POST AND
WAYNE CHARLES,

              Defendant.
--------------------------------------------------------x

**Motion for Dismissal of Counts One and Two and for a New
Trial on Count Three Pursuant to Fed. R. Crim. P. 12(b)(3)(B)**

      Constance Post and Wayne Charles, the defendants, hereby jointly move to dismiss Counts One and Two of the indictment and Wayne Charles moves for a new trial on Count Three. As set more fully below, because the question of the constitutionality of the honest services fraud statute, which is the subject of this motion, is *sub judice* in the Supreme Court of the United States, the defendants request the Court to defer ruling on this motion until a decision is rendered later this year.

<u>The Three Cases in the Supreme Court</u>

      On December 8, 2009, the United States Supreme Court heard oral argument on the constitutionality of the "intangible right of honest services" statute, Title 18, United States Code, Section 1346. Certiorari had been granted in *Black v. United States*, 129 S. Ct. 2379, 173 L. Ed. 2d 1291 on May 18, 2009 and in *Weyhrauch v. United States*, 129 S. Ct. 2863, 174 L. Ed. 2d 575 on June 29, 2009. Reports are that several justices expressed skepticism as to the constitutionality of

the statute. *See, e.g.,* http://www.scotusblog.com/wp/reaching-a-constitutional-issue/#more-13656 (last visited December 28, 2009).

On October 13, 2009, the Supreme Court granted a petition for writ of certiorari in *Skilling v. United States*, No. 08-1394, 130 S. Ct. 393 (2009). Oral argument in the *Skilling* case, which more pointedly challenges the constitutionality of Section 1346, has been advanced to March 1, 2010. *See* http://www.scotusblog.com/wp/two-argument-changes-set/#more-13896 (last visited December 28, 2009). It is evident that the High Court will soon rule on the constitutionality of Section 1346 which may well vitiate *United States v. Rybicki*, 354 F.3d 124, 144 (2d Cir. 2003) (en banc), where the Second Circuit held that the statute was not unconstitutionally vague on its face.[1]

Below are brief summaries of the three "honest services" cases now pending before the Supreme Court and the issues the Court has agreed to address:

(1)  *Black v. United States*. This case involved the prosecution of Conrad Black, a CEO of a corporation that owned a number of newspapers, and other senior executives regarding a payment of $5.5 million in exchange for a non-compete promise from some of the defendants. Black argued that the payment was made to evade Canadian taxes, not to defraud anyone or any entity to whom he owed "honest services." The Seventh Circuit rejected this argument and the Supreme Court granted certiorari upon the following question: whether the "honest services" clause of 18 U.S.C. §1346 applies where there was no finding that the defendants contemplated identifiable economic harm to the persons or entities to whom they owed honest services.

---

[1] The *Rybicki* decision did not resolve whether the statute could be found unconstitutional as applied to the present circumstances, an argument that these defendants intend to make should the Supreme Court decisions be adverse to them.

(2) *Weyhrauch v. United States*. Bruce Weyhrauch, an Alaska legislator, allegedly solicited future legal work from oil companies in exchange for his favorable votes on legislative matters. He was not accused of receiving any money or benefits from the companies, only the understanding that they would hire him in the future when he returned to the private sector. The Ninth Circuit, reversing the district court, found that the government did not need to prove an independent violation of state law to sustain a conviction. Recognizing a split among the circuits, the Supreme Court agreed to resolve the following question: whether, in order to convict a state official for depriving the public of its right to his honest services through non-disclosure of material information, the government must prove the defendant violated a duty of disclosure imposed by state law.

(3) *Skilling v. United States*. Jeffrey Skilling, the CEO of Enron Corporation, was prosecuted for depriving the company and its shareholders of his honest services by deliberately misstating the company's financial situation. Skilling contended that his intent was not to defraud the company, but that his conduct instead was in the company's interest because it was supposed to meet earnings projections and achieve a higher stock price. The Fifth Circuit rejected his argument. The Supreme Court granted certiorari to resolve the question of whether the "honest services" statute required proof the defendant intended private gain rather than advancement of the employer's interest and, if not, whether the statute was unconstitutionally vague.

It is clear that the questions regarding the "honest services" statute have relevance to the present case against Ms. Post and Mr. Charles. For starters, the statute may be determined to be unconstitutionally vague (*Skilling*). In fact, the news reports of the oral argument in *Black* and *Weyhrauch* suggest a number of Justices leaning that way. The Court may, in the alternative, require

the government to prove a violation of state law, at least where public officials (read: Ms. Post) are concerned, in order to prove a violation of §1346 (*Weyhrauch*).  There was no such proof, instruction, finding or verdict in this case.  Or, the Court may determine that identifiable, economic harm to those to whom the honest services are owed, not just personal enrichment of the defendant, must be proved.  (*Black*).  Here too there was no such proof, instruction, finding or verdict in this case.  The Supreme Court's decision in these cases will tell us much about the continued viability of the "honest services" convictions under Counts One and Two in this case.

<u>The Indictment</u>

Count One of the Indictment alleged that Ms. Post held two positions in the city government of Mount Vernon, New York and that "the City of Mount Vernon and its citizens had an intangible right to the honest services of their public officials" including Post who was "under a duty to provide honest services." ¶ 2.  It was alleged that Ms. Post steered a computer services contract, a $500,000 loan, and architectural services to Mr. Charles without revealing her close relationship to him. ¶¶ 7-15. The Indictment further alleged that the defendants conspired to commit mail fraud in violation of both sections 1341 and 1346. ¶ 17. The "object of the conspiracy" was alleged to have been to devise a scheme to deprive the City of Mount Vernon and its citizens of their intangible right of honest services of Constance G. Post *and* to deprive the City of Mount Vernon, its citizens and HUD of money and property. ¶ 18.

The substantive mail fraud charge, Count Two, contained the same factual allegations and alleged the defendant schemed to deprive the City of Mount Vernon of Post's honest services and of money.

Count Three alleged that Mr. Charles falsely claimed that his only business dealings with Mount Vernon involved the $500,000 loan on the Third Street property and Section 8 payment agreements for his residential rental properties, that he had no financial interest in Micros Only, and that Micros Only was a tenant in his building and was owed by Blanche and William Brown.

### The Jury Instructions

The Court instructed the jury that Counts One and Two could each be proven by either the theory that the defendants schemed to defraud the City of Mount Vernon of money and property or of Ms. Post's honest services. The Court summarized Counts One and Two as alleging both money fraud and honest services fraud. T. 3746-48. Regarding the conspiracy to commit mail fraud in Count One, the Court charged that "a defendant need not have joined in all of the conspiracy's unlawful objectives." T. 3753. In addition, the Court charged that

> What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

T. 3754-55.

As to Count Two, charging the substantive mail fraud violation, the Court charged:

> [T]he government must prove that the alleged scheme contemplated depriving another of money or property or of the intangible right of honest services.
>
> * * *
>
> Federal law protects two kinds of interests from schemes to defraud through the use of the mails. The mail fraud alleged in Count Two alleges that the defendants intended to defraud victims of both of these interests. First, the interest in money and property, and second the interest in honest services. While both interests are charged

   in Count Two, in order to find either defendant guilty of that count, you need only find that the government has proven beyond a reasonable doubt that one of these interests was implicated in this case but the jury must be unanimous as to which of the theories has been proven.

T. 3761-62. The jury was not instructed to render any findings or special verdict. It therefore cannot be shown that the defendants were not convicted under 18 U.S.C. §1346 on these counts.

Section 1346 is Unconstitutionally Vague

  A statute violates due process when it is so vague that it does not give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. Rockford*, 408 U.S. 104, 108 (1972); *see Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). Section 1346 is just such a statute. It prohibits a scheme to deprive another of "the intangible right of honest services." 18 U.S.C. § 1346. Those spare words "provide[] no clue to the public or the courts as to what conduct is prohibited under the statute." *United States v. Handakas*, 286 F.3d 92, 104 (2d Cir. 2002), overruled in part by *United States v. Rybicki*, 354 F.3d 124, 144 (2d Cir. 2003); *see United States v. Sorich*, 523 F.3d 702, 707 (7th Cir. 2008) (§ 1346 is "amorphous and open-ended"); *United States v. Urciuoli*, 513 F.3d 290, 294 (1st Cir. 2008) (§ 1346 "is vague and undefined"); *United States v. Brown*, 459 F.3d 509, 520 (5th Cir. 2006) (§ 1346 is a "facially vague criminal statute"); *United States v. Murphy*, 323 F.3d 102, 116 (3d Cir. 2003) ("the plain language of § 1346 provides little guidance as to the conduct it prohibits").

  As Chief Judge Jacobs pointed out in his *Rybicki* dissent, "Surely no unambiguous meaning can be assigned to a phrase that has no meaning except what can be distilled from *some* pre-*McNally* [*v. United States*, 483 U.S. 350 (1987)] cases provided that *other* pre-*McNally* cases are ignored,

particularly since the designation of overruled cases that are in and those that are out is itself essentially arbitrary." 354 F.3d at 160 (Jacobs, J., dissenting)(emphasis in original). "Ordinary people cannot be expected to undertake such an analysis; rare is the lawyer who could do it; and no two lawyers could be expected to agree independently on the elements of an offense that must be defined by such a project." *Id*.

Further, as in the *Weyhrauch* case, the government failed to prove a violation of a disclosure duty imposed by state law. The Indictment alleged that Post was required by law to file disclosure forms (¶16d) but there was no such instruction and no finding that this was ever proven. Finally, as in *Black*, there was no instruction and no finding that the defendants had to intend identifiable, economic harm to Mount Vernon and its citizens. These convictions cannot stand.

## A Jury May Not Rely on an Unconstitutional Ground to Convict

In *Stromberg v. California*, 283 U.S. 359, 367-68 (1931), the Supreme Court established that a general verdict must be set aside if there is a possibility that the jury relied on an unconstitutional ground to convict.

Although the courts later distinguished general verdicts when one of the possible bases for conviction was supported by inadequate evidence, *see Turner v. United States*, 396 U.S. 398, 420 (1970), the *Stromberg* rule still invalidates general verdicts where one of the possible theories for a conviction was illegal or unconstitutional. *See, e.g., Griffin v. United States*, 502 U.S. 46, 53 (1991) (explaining that the holding of *Stromberg* stands for the principle that, "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground."); *Boyde v. California*, 494 U.S. 370, 380

(1990) (establishing that the Court should set aside a conviction when the jury is clearly instructed it may convict on an impermissible theory of guilt, among other proper theories, because "[a]lthough it is possible that the guilty verdict may have had a proper basis, it is equally likely that the verdict . . . rested on an unconstitutional ground . . . and [the Supreme Court has] declined to choose between two such likely possibilities.")(citation and internal quotation marks omitted) (alteration in the original); *Mills v. Maryland,* 486 U.S. 367, 376 (1988) ("[W]ith respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict.") (citations omitted).

Here, the Court instructed the jury that Counts One and Two could each be proven by *either* the theory that, under Section 1341, the defendants schemed to defraud the City of Mount Vernon of money and property *or*, under Section 1346, of Ms. Post's honest services. And, since there was no special verdict sheet, this Court has no way to determine which of those theories the jury rested its verdict on. Accordingly, if the Supreme Court declares Section 1346 unconstitutional, then it is certainly possible that the jury convicted Mr. Charles and Ms. Post on this impermissible ground. Indeed, because this is precisely the situation prohibited by the law set forth above, this Court must then vacate Mr. Charles and Ms. Post's convictions on both Counts One and Two.

### The Remaining Count Against Wayne Charles

As the Court is aware, Mr. Charles was convicted of Count Three, the false statement charge. Yet, the charges in the infirm counts may certainly have influenced the jury to convict Mr. Charles on Count Three. However, the allegations in this Count were dissimilar to those in the first two

counts. Count Three alleged a material misstatement to investigators, not a scheme to defraud. The first two counts alleged a conspiracy and scheme to defraud from 1998 through 2005. Count Three was alleged to have taken place on March 20, 2006. In addition, the jury was permitted to rely on the government's "honest services" theory to determine an element of the offense, that is, that the statements attributed to Mr. Charles were material. Mr. Charles suffered from a prejudicial spillover from the proof admitted on the first Two Counts, including the extensive 404(b) evidence admitted as probative of the defendants' alleged fraudulent "intent" with respect to those Counts.

In analyzing a claim of prejudicial spillover, courts in this Circuit may consider "(1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong," *United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006) quoting *United States v. Hamilton*, 334 F.3d 170, 182. Although the jury convicted Wayne Charles of Count Three, counsel examined Special Agent Huvane concerning those statements and vigorously argued that his client was not guilty. T. 3597-3604. The agent decided not to record his interview with Mr. Charles and so the government had to rely on the agent's recollection of his statements. Given the ambiguities argued by counsel, the jury could have been improperly influenced by the evidence admitted on the counts that were unconstitutionally charged. The jury may have found that the statements were material to whether Mt. Vernon was deprived of the intangible right of the honest services of Constance Post.

## Timeliness of this Motion

Following the verdict in this case, post-trial motions were "deemed made." Although a briefing schedule was set, there has been a change of counsel by the defendants and this submission was made promptly after such change.

In any event, a claim that a statute by which a defendant is charged is unconstitutional may be raised at any time. Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Thus, a claim that an indictment fails to state an offense may be raised for the first time on appeal. *United States v. Wexler*, 621 F.2d 1218, 1223 (2d Cir. 1980). Rule 12(b) provides that objections to the jurisdiction of the court may be raised at any time during the pendency of the proceedings. Jurisdictional claims permitted under Rule 12(b) include allegations that "the applicable statute is unconstitutional or that the indictment fails to state an offense." *United States v. Perlaza,* 439 F.3d 1149, 1167 n. 21 (9th Cir. 2006) *(*citing *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir. 1989) ; *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir.), cert. denied., 412 U.S. 928, 37 L. Ed. 2d 155, 93 S. Ct. 2751 (1973)(a claim that a statute is unconstitutional or that the court lacked jurisdiction may be raised for the first time on appeal); *see also* 24 Moore's Federal Practice § 612.04, at 612-13 (3d ed. 2002) ("The defense of failure to charge an offense may be based on . . . the unconstitutionality of the statute relied upon.").

## The Court Should Defer Sentencing until the Supreme Court Rules

We have not yet endeavored to fully brief the constitutionality of Section 1346 and the reasons this Indictment should be dismissed because we will have an answer by May or June of

2010. The Supreme Court is interested in the viability of Section 1346 and further research and briefing by the parties and the Court would not be of much value given the imminence of a Supreme Court pronouncement on this statute.

The defendants recognize that the Court has discretion to sentence the defendants as scheduled. Two district courts have denied motions to dismiss inasmuch as *Rybicki* is currently binding; those courts decided not to wait for action by the Supreme Court. *See United States v. Martin*, 2009 U.S. Dist. LEXIS 114816 (S.D.N.Y Dec. 9, 2009); *United States v. Brooks*, 2009 U.S. Dist. LEXIS 99997 (E.D.N.Y. Oct. 27, 2009). Nonetheless, if the Supreme Court declares the statute unconstitutional, the defendants could see their convictions vacated in light of that decision. The defendants believe that time and effort could be saved by hearing from the Supreme Court before imposing sentence. Moreover, given the substantial doubt that exists concerning the statute, the defendants might be imprisoned for having committed an unconstitutional offense.

<u>Conclusion</u>

For these reasons, the Court should defer sentencing until the Spring when a decision will be rendered by the Supreme Court as to the constitutionality of Section 1346. Depending on which way that decision goes, the defendants anticipate they will submit further motions with respect to the issues addressed herein.

Dated: January 12, 2010
      White Plains, New York

Respectfully submitted,

_____
RICHARD D. WILLSTATTER
GÖNÜL AKSOY
Green & Willstatter
200 Mamaroneck Avenue, Suite 605
White Plains, New York 10601
(914) 948-5656

*Attorneys for Defendant Wayne Charles*

_____
CLINTON W. CALHOUN, ESQ.
Briccetti, Calhoun & Lawrence, LLP
81 Main Street, Suite 450
White Plains, New York 10601
(914) 946-5900

*Attorneys for Defendant Constance Post*