UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :

UNITED STATES OF AMERICA,              :

        -against-                           :      **08 CR. 243 (KMK)**

CONSTANCE G. POST and                 :
WAYNE CHARLES,                            :

                    Defendants.      :

------------------------------------------------------------X

## DEFENDANTS' POST-TRIAL MOTIONS

Defendants Constance G. Post and Wayne Charles were convicted on March 31, 2009, following a jury trial, of Conspiracy to Commit Mail Fraud and Mail Fraud, and Wayne Charles was also convicted of a False Statement count. Following the jury's verdict, counsel for the defendants asked that all post-trial motions be "deemed made" and the Court agreed. (March 31, 2009 Tr. 15-16). A briefing schedule was set, although there were no submissions within that schedule. Thereafter, the defendants each retained new counsel. Post's new counsel's appearance was approved by the Court on December 3, 2009, following a Curcio inquiry. Charles' new counsel first appeared on October 28, 2009; a Curcio inquiry has been scheduled for January 25, 2010.

Post and Charles have filed a joint motion asking the Court to defer proceedings in this case until the United States Supreme Court renders its decision in the "honest services - fraud" cases presently before it. In addition to that motion, the defendants respectfully submit the following motions pursuant to Rules 29 and 33, Federal Rules of Criminal Procedure:

I. **MOTION TO SET ASIDE VERDICT AND ENTER AN ACQUITTAL OR ORDER A NEW TRIAL (RULES 29 AND 33).**

The evidence that was presented at the trial of this case departed in significant and critical ways from what was charged in the indictment. That departure constituted a constructive amendment of the indictment, or a prejudicial variance, and should result in the entry of an acquittal since the government did not prove the offense as set forth in the indictment or any other offense that is not time-barred. If the Court declines to enter an acquittal, it should grant the defendants a new trial as to Counts 1 and 2.

The Indictment and the Proof at Trial

The indictment charged the defendants with engaging in conspiracy and mail fraud in connection with three transactions involving the City of Mount Vernon and its Urban Renewal Board (MVURA): (1) a computer services contract entered into with a corporation called Micros Only; (2) a $500,000 construction loan to the Charles Group for the rehabilitation of a building at 3-5 East Third Street in Mount Vernon; and (3) $40,000 in payments for architectural services to renovation properties owned by or under contract to Charles.

In particular, the indictment alleged:

- <u>Computer Services Contracts to Wayne Charles</u>

Paragraphs 7 to 9 of Count One alleged that, from 1998 through 2002, Post steered no-bid contracts to Micros Only although the services were provided by Micros Only Computer Concepts, Inc., a company owned by Charles.

- <u>The $500,000 Loan to the Charles Group</u>

Paragraphs 10 to 13 of Count One alleged that, in or about March 1999, the Charles Group purchased 3-5 East Third Street in Mount Vernon and that, in July 1999, Post recommended that the MVURA should loan the Charles Group some $500,000 to rehabilitate the property. It was further alleged that upon the completion of construction, the Charles Group was "required to repay $250,000 of the loan." ¶ 11(b). Further, it was claimed that from August 2000 to August 2003, $500,000 was paid out but the loan "was not reflected in the books and records of the MVURA." Critically, the Indictment alleged that "pursuant to the terms of the loan agreement, a private funding source repaid $250,000 of the loan and Charles continued to owe the City of Mount Vernon the remaining $250,000 plus interest." ¶ 12. Finally, it was alleged that "the Charles loan" was first entered into the books and records of MVURA only after Post was contacted by investigators; only then did Charles make a series of five payments from September 2005 through February 2006. ¶ 13.

- The Payment of Services to Benefit Charles Properties

In paragraphs 14 and 15, the Indictment alleged that from 1999 to 2002, Post approved the disbursement of $40,000 of HUD money for architectural and other services for the renovation of the Third Street property and a parcel [at Sanford Boulevard] under contract to a company owned by a Charles entity called Whatever Real Estate.

The $500,000 construction loan to the Charles Group was closed on or about July 31, 2000, according to testimony at trial. (Tr. 1713). It was evidenced by a loan agreement, a mortgage and a mortgage note (GX1070A). According to the testimony of a number of witnesses, the proceeds of the loan were not disbursed all at once but instead were disbursed piecemeal under a draw-down procedure that required verification and certification that the disbursement was proper. (Tr. 1706-1707, 1809-1812, 2054-2055, 2118-2119). It appears that this procedure was followed until the full amount of the loan had been disbursed.

In September 2003, a new loan and a new set of documents were entered into. The new loan represented the permanent financing on the building, as provided by Community Preservation Corporation (CPC). A new $250,000 mortgage and a new mortgage note by Charles in favor of the MVURA replaced their counterparts from the $500,000 construction loan. As a result, after the September 18, 2003 closing, MVURA occupied a different and lower position in terms of priority than it had under the original loan, the principal amount owed to it was different, the rate of interest was different, the term of the loan was different, the payment terms were different, and there was no longer a personal guarantee by Wayne Charles as there

4

had been with the construction loan.[1]  A satisfaction-of-mortgage was filed as to the $500,000 construction loan mortgage.  (GX 1277).

Analysis

Based on the foregoing facts, the defendants submit that the government's proof does not support a conviction in this case.  In the first place, its evidence did not establish any misconduct with respect to the $500,000 construction loan.  Rather, the government's proof of misconduct pertained to the subsequent $250,000 permanent financial loan that replaced and extinguished the construction loan.  Second, no part of the remaining transactions alleged in the indictment and proved at trial occurred within the statute of limitations.  As a result, the convictions in this case must be set aside.


**POINT I  -  THE $500,000 CONSTRUCTION LOAN WAS REPLACED BY A NEW LOAN AND NEW TERMS.**

As between the MVURA and Charles, the September 2003 transaction clearly represented a novation.  See In re Balfour MacLaine International, Ltd., 85 F.3d 68, 82-83 (2d Cir. 1996); May Department Stores Co. v. International Leasing Corp., 1 F.3d 138, 140 (2d Cir. 1993)(which defined novation under New York law as "an agreement for an existing obligation to be

---

[1] The September 2003 mortgage note contained a provision that "the terms of the loan agreement of July 31, 2000 shall remain in full force and effect until this Mortgage is fully paid." (GX1231).  This evinces the parties' intention to incorporate into the new agreement the terms that existed in the old loan agreement; it did not mean the old loan continued, but instead meant that the *terms* of that loan applied to the new agreement.  In fact, if the old loan had been intended to continue, there would have been no need for a new agreement at all.

extinguished immediately by the acceptance of a new promise."). A new agreement and a new set of terms replaced and extinguished a prior agreement and set of terms between the parties. (GX 1231). Significantly, the $500,000 mortgage was satisfied and the corresponding $500,000 mortgage note was retired, replaced by a new mortgage and a new note with new terms.

The indictment never mentions the September 2003 loan, the September 2003 mortgage, or the September 2003 note. This omission was significant in at least two ways: (1) it conceals the fact that the $500,000 construction loan to the Charles Group was satisfied and effectively discharged; and (2) it conceals the fact the government's evidence regarding the allegedly improper booking of the loan in 2003, the lax reporting and collection of the loan, and the belated re-positioning of the loan on the Mount Vernon books in 2005 did not relate to the $500,000 construction loan at all but to a different loan, namely the $250,000 permanent financing loan made in 2003. Further, though the government argued that the original $500,000 construction loan, dated July 31, 2000, was left off the books (Tr. 3503), the trial testimony demonstrated that this was not the case. (Tr. 1803-13) Indeed, Carmen Sylvester, who in July of 2000 was MVURA's Housing and Community Development Administrator, testified that "this was not in any sense of the word a hidden loan." (Tr. 1813)

Post and Charles contend that this constituted a constructive amendment of the indictment, creating "a substantial likelihood that the defendants were convicted of an offense other than the one charged by the grand jury." United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996). Examples of constructive amendments that result in overturned convictions are abundant, Stirone v. United States, 361 U.S. 212, 217 (1960); United States v. Milstein, 401 F.3d 53, 65 (2d Cir. 2005), and involve the government presenting different facts than those charged

6

in the indictment. Indeed, "even an amendment or a variance that does not alter an essential element may still deprive a defendant of an opportunity to meet the prosecutor's case." United States v. Rigas, 490 F.3d 208, 228 (2d Cir. 2007) *quoting* United States v. Helmsley, 941 F.2d 71, 90 (2d Cir. 1991). Here, the indictment alleged misconduct with respect to one loan, the $500,000 construction loan, but the government's proof at trial of that alleged misconduct was connected to a completely different loan.

In contrast to a constructive amendment, "[a] variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." Dunn v. United States, 442 U.S. 100, 105 (1979); United States v. Zingaro, 858 F.2d 94, 98 (2d Cir. 1988). "[W]here an indictment gives insufficient notice of offense, the resulting prejudice requires reversal of the conviction." United States v. Attanasio, 870 F.2d 809, 817 (2d Cir. 1989); *see* United States v. McDermott, 245 F.3d 133, 139 (2d Cir. 2001)(prejudicial variance despite proper instruction). Whether viewed as a constructive amendment or a prejudicial variance, the defendants' point remains the same: the government's proof did not establish that any crime charged in the indictment was committed by the defendants in connection with the $500,000 construction loan.

### POINT II - NO PART OF THE REMAINING TRANSACTIONS OCCURRED WITHIN THE STATUTE OF LIMITATIONS PERIOD.

The government thus did not prove fraudulent misconduct in connection with the loan that was charged in the indictment. As to the other transactions in the indictment, the computer services contract with Micros Only and the architectural services, no part of those contracts took place within the applicable statute of limitations. As the Court instructed the jury, the applicable

limitations period required the conspiracy to be in existence after March 19, 2003 (Tr. 3801). According to the indictment, however, the Micros Only transactions and architectural services ended in 2002. The trial testimony was consistent with that. See, e.g., testimony of Michael Leigh, Tr. at 1132-34. Though there was testimony that Mr. Leigh submitted bills to Mount Vernon in February 2003, which included work performed for Micros Only, Leigh testified that the work he was paid for in February of 2003 was work he performed in 2002 for the City, after the Micros Only contract was terminated. (Tr. 1092-1102, 1134-37). In any event, the check for Leigh's 2002 work was dated February 24, 2003, and paid on February 26, 2003 (prior to March 19 of that year). See GX 588. Since, as explained above, the government failed to prove at trial that there was conspiratorial conduct with respect to the $500,000 construction loan, and because any such conduct with respect to the Micros Only contracts and architectural services ended by 2002, the government failed to establish that the prosecution was timely and not barred by the statute of limitations in 18 U.S.C. § 3282.[2]

A conspiracy is complete, commencing the running of the statute of limitations, when its purposes have been accomplished or abandoned. United States v. Eppolito, 543 F.3d 25, 47 (2d Cir. 2008); United States v. Persico, 832 F.2d 705, 713 (2d Cir. 1987). In this case, the $500,000 loan was not proven to be fraudulent; the evidence, in the light most favorable to the government, was that the September 2003 loan was questionable, yet this loan was not alleged in the Indictment to be fraudulently obtained. As argued above, the other conduct alleged in the

---

[2] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

indictment and the subjects of the government's proof at trial all ended before the statute of limitations ran.

When a general verdict is based on a legally inadequate ground, such as because of a statutory time bar, the verdict should be set aside. See Yates v. United States, 354 U.S. 298, 312 (1957) *overruled on other grounds* Burks v. United States, 437 U.S. 1 (1978). Indeed, "criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" Toussie v. United States, 397 U.S. 112 , 114 (1970 ) *quoting* United States v. Scharton, 285 U.S. 518, 522 (1932). It was in the setting of a statute of limitations challenge that the Supreme Court indicated that it "view[ed] with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions." Grunewald, 353 U.S. at 404.

For the foregoing reasons, the defendants move the Court to set aside the jury's verdict and enter an acquittal in their favor as to Counts 1 and 2.[3]

---

[3] If the Court denies this request, it nevertheless should grant the defendants a new trial. The constructive amendment of the indictment, or alternatively the prejudicial variance of the government's proof at trial with the indictment, deprived Post and Charles of a fair trial. They were entitled to a trial based on the allegations and transactions contained in the indictment, but instead found themselves confronted with evidence concerning a different transaction. Under the circumstances, the present conviction should be dismissed and an acquittal entered or, if the Court declines that result, a new trial ordered.

## II. MOTION FOR A NEW TRIAL BASED ON FAILURE TO INSTRUCT AND INEFFECTIVENESS OF COUNSEL (RULE 33).

If the Court is unwilling to grant the motion set forth above, it should nevertheless grant Ms. Post a new trial. The trial as to her was marred by a failure to instruct the jury, and her lawyers' failure to request such an instruction, that the statements of her co-defendant Wayne Charles that formed the basis of Count 3 of the indictment could not be considered as evidence against Post. Given the nature of those statements, the failures prejudiced Post and deprived her of a fair trial.

Wayne Charles was charged in Count 3 with the crime of False Statements under 18 U.S.C. § 1001. Specifically, he was charged with making three false statements on March 20, 2006 to the HUD investigators. Although Post's name was not mentioned in that count of the indictment, all three concerned Micros Only and the $500,000 construction loan, the bases for Counts 1 and 2 against Post and Charles jointly. In Statement 1, Charles was alleged to have stated falsely that the only business dealings he ever had with Mount Vernon involved the receipt of the $500,000 loan and Section 8 Housing Assistance Payment Agreements at his residential rental properties. In Statement 2, he allegedly falsely stated he had no financial interest in Micros Only, although he had heard of the company. In Statement 3, he was accused of stating falsely that Micros Only was a tenant in his Manhattan building and he knew it to be owned by Blanche and William Brown. Post was not charged in Count 3 and was not charged with False Statements at all.

Prior to the commencement of the trial, there had been a considerable amount of discussion on the record regarding these and other statements and the <u>Bruton</u> issues they

presented (see Minutes of February 23, 2009 pretrial conf., pp. 145-49, 160, 263-68). However, at the trial itself, there was no further discussion of the limited use that the jury could make of the statements. Indeed, just before the testimony of Agent Huvane, the Court instructed the jury as follows:

> THE COURT: ... All right. As I mentioned, there's going to be, there's one witness list left, that's Agent Huvane, he's going to testify in a minute. Before he testified, I just want to instruct you as to one aspect of his testimony.
>
> Agent Huvane is going to testify about statements he says Mr. Charles made to him. Okay? What I want to remind you of is, in the indictment, which, again, is evidence of nothing and just contains the chargers, but the third count of the indictment charges only Mr. Charles with making false statements in a matter that's in the jurisdiction of the United States. And what I want to remind you is, there are only three allegedly false statements that are part of Count Three, and those are that the only business dealings that Mr. Charles had ever had with the City of Mount Vernon involved the receipt of a $500.00 loan for the renovation of the Third Street property and the receipt of Section 8 housing assistance payment agreements at his residential properties; two, that Mr. Charles had no financial interest in Micros Only, although he had heard of the company; and, three, Micros Only was a tenant in his Manhattan building and he knew it to be opened by Blanche and William Brown.
>
> So these are the three statements that the third count of the indictment alleges were falsely made by Mr. Charles when he was interviewed by Agent Huvane. There may be testimony about other statements, and you can consider those other statements in connection with considering all the evidence in this case, but the only statements that are allegedly falsely made on March 20, 2006 are the three that I just read to you, which are in the indictment. Okay?
>
> Ready to go, Ms. Dunne?

(Tr. 3298-3299).

Agent Huvane was then called as a witness by the government and testified, among other things, about his March 20, 2006 interview with Wayne Charles and the statements made by Charles during that interview. (Tr.3310-3315 direct examination; 3316-3342 cross-examination; 3347-3349 redirect; and 3350-3355 re-cross). Post's name was mentioned in connection with these statements when Charles' attorney asked Agent Huvane on cross-examination if "[Charles] said that he had learned from Commissioner Post that their computer system needed to be updated; is that right?" (Tr.3328). The <u>government</u> objected before the witness answered, and the Court did not rule on the objection but suggested that Charles' attorney "consult with counsel." (<u>Id.</u>) The attorney moved on, but the damage was done. Post was linked by name to these statements and to the hiring of Micros Only. The jury was not told to disregard the question nor was a request made for such an instruction.

More significantly, no limiting instruction at all was given to the jury at the time of Agent Huvane's testimony and the jury was never told, before or after his testimony, that it could not consider the evidence of those statements against Ms. Post. No such instruction was requested by any party.

In closing arguments, Post's attorney did not mention the Charles statements and did not argue to the jury that it could not consider those statements against Post. (Tr. 3614-3698). The government did mention the statements but likewise never suggested that they could be considered only as to Charles and not as to Post. (Tr. 3730-3733).

The Court again returned to the statements in its final charge to the jury. It read Count 3 and the terms of 18 U.S.C. § 1001(a) to the jury and then advised the jury as to the purpose and five essential elements of that statute. (Tr. 3771-3776). Again, there was no instruction that

12

these statements could not be considered as to Ms. Post, nor was such an instruction ever requested.[4]

Finally, during the Court's charge to the jury, the following instruction was given in the context of the requirement for separate verdicts as to each defendant:

> In addition, some of the evidence in this case was limited to one defendant. Let me emphasize that any evidence admitted solely against one defendant may be considered only as against that defendant and may not in any way enter into your deliberation on the other defendant.

(Tr.3779).

The jury was never told that the evidence of Charles' March 20, 2006, statements could only be considered as to him and could not be considered as to Post. They were told that Count 3 charged only Charles, but the evidence of the statements charged under Count 3 was never limited as to him. Because the indictment charged a conspiracy and because the government argued at length that "Ms. Post had been working pretty much nonstop on behalf of Mr. Charles inside of City Hall, for years" (Tr.3729) and that Mr. Charles in his statements was "trying to protect Ms. Post" (Tr.3733), the jury may well have concluded that the evidence of those statements could be considered against Post. No one told them otherwise.

In fact, the Court told the jury that "evidence admitted solely against one defendant" could be considered only as to that defendant and not the other. The evidence of Charles' statements was not admitted solely as to Charles, at least not that the jury was told. Since the jury was not told the evidence was limited as to Charles, it could have reasonably concluded that

---

[4] The government's written requests to charge and the transcript of the charge conference held during the trial (Tr. 2564 - 89) disclose no such request.

13

it was not so limited. The instruction then would have freed the jury to consider the evidence against Post as well as Charles.

The evidence of Charles' statements was not admissible as to Post but was devastating as to her. It was not admissible as a co-conspirator statement under Fed. R. Evid. 801(d)(2)(E) because the conspiracy had ended, or under any other theory. A limiting instruction clearly was required, along the lines of Sand, <u>Modern Federal Jury Instructions</u>, Instr. 5-20. Yet, one was never given and was never even requested by the government or Ms. Post's attorneys.

Just as clearly, the statements were prejudicial. They were false and they were criminal, according to the jury's verdict. They were made by Charles but designed in part to protect his co-conspirator Post, according to the government. The taint of these statements easily could have covered Post because the statements were admitted without any limitation on their use.

It is hard to imagine that a limiting instruction would not have been given if any of the attorneys had thought to request it. Perhaps, respectfully, it should have been given even in the absence of a request. It certainly fell to Post's attorneys to request an instruction that these false and damaging statements not be considered as evidence against Ms. Post. They did not, and that failure crossed the line set in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), for measuring ineffectiveness of counsel. Under the <u>Strickland</u> test, Post submits that counsel's failure (1) fell below an objective standard of reasonableness, and (2) resulted in prejudice to her. There was no good reason and no strategic purpose to be served by not requesting a limiting instruction. Nor was Post's entitlement to such an instruction debatable: it would have been given for the asking. Further, the prejudice was palpable. Charles' criminally false statements about the $500,000 loan and Micros Only as determined by the jury were unfairly considered against Post, who was

14

charged along with Charles with conspiracy and mail fraud in connection with the $500,000 loan and Micros Only.

Further, the failure to give a limiting instruction or to request one was a "plain error" within the meaning of Fed. R. Crim. P. 52(b). It was error, and plain and it affected Ms. Post's substantial rights as well as the fairness, integrity and public reputation of the judicial proceedings against her. United States v. Cotton, 535 U.S. 625, 631-32 (2002); United States v. Williams, 399 F.3d 450, 454 (2d Cir. 2005). Most simply, the error deprived Ms. Post of one of her most substantial rights: the right to a fair trial.

Upon the record and for the foregoing reasons, the Court should grant Ms. Post a new trial.

## **CONCLUSION**

The government failed to prove the charges against Constance Post and Wayne Charles; they did not receive a fair trial. The government's proof at trial in part constituted a constructive amendment of the charges and, in the remaining part, was barred by the statute of limitations, and therefore cannot support the convictions. In Ms. Post's case, she was prejudiced by the introduction of evidence that was inadmissible against her, by the failure to instruct the jury as to the proper use of that evidence, and by the failure of her attorneys to even request such an instruction.

For the reasons stated herein, the Court should set aside the jury's verdict, grant the defendants an acquittal or, if it does not, grant them a new trial.

DATED: White Plains, New York
January 21, 2010

        Respectfully submitted,

        BRICCETTI, CALHOUN & LAWRENCE, LLP

BY: s/ _____
   CLINTON W. CALHOUN, III, ESQ.
   81 Main Street, Suite 450
   White Plains, New York 10601
   (914) 946-5900

   *Attorneys for Defendant-Constance Post*


        GREEN & WILLSTATTER

BY: s/ _____
   RICHARD D. WILLSTATTER, ESQ.
   GÖNÜL AKSOY, ESQ.
   200 Mamaroneck Avenue, Suite 605
   White Plains, New York 10601
   (914) 948-5656

   *Attorneys for Defendant-Wayne Charles*