IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW
YORK

| | |
|---|---|
| UNITED STATES OF AMERICA   )<br>)<br>)<br>)<br>)<br>V.                                                     )<br>)<br>)<br>)<br>CONSTANCE G. POST, et al.,           )<br>)<br>Defendant.                              ) | **Docket No.**<br>**08 Cr. 243 (KMK)** |

### DEFENDANT'S MOTION FOR A JUDGMENT OF AQUITTAL AFTER JURY TRIAL PURSUANT TO RULE 29 AND A MOTION FOR A NEW TRIAL PURSUANT TO RULE 33

For purposes of brevity and to prevent unnecessary repetition, Defendant Post fully adopts and incorporates the statement of facts, standard of review, argument and authority cited in Defendant Charles' post-trial motion, pursuant to FRCP Rules 29 and 33, dated January 13, 2016, as well as the previous post-trial motions filed by both defendants for a judgment of acquittal and for a new trial filed after the first jury trial in this matter in 2009.

In addition to the arguments and authority in the foregoing submissions which mandate reversal and/or a new trial, Defendant Post is entitled to the relief requested due to improper remarks made during the Government's initial and rebuttal summations which further deprived the

1

defendant of a fair trial, to wit:

1. Mr. Dember attacked defense counsel during his rebuttal summation by claiming counsel fabricated testimony[1];

2. He repeatedly and without any evidence in support, characterized the check for $30,000 from Mr. Charles to the defendant as "not a loan" but a "bribe", "gratuity" "kickback" and a "thank you" to Ms. Post for her assistance in helping him "steal". He compounded the misconduct during his rebuttal summation by claiming he didn't need to prove why the check(s) were paid[2].

3. He improperly shifted the burden of proof to the defendant during his rebuttal summation claiming the defense needed to "do more" to convince the jury regarding defense evidence of HUD SEMAP scores[3].

## Improper Comment about Defense Counsel

At trial, Yvonne Ross testified that she ran into Wayne Charles who told her that Dante Brown might have a job available at Micros only:

> Q. …Now, do you recall testifying yesterday that you had been out of work at the time you first got information regarding a possible job position over -- over for doing data entry?
> A. Yes.
> Q. How long had you been out of work at that time?
> A. Since '97.
> Q. So pretty substantial period of time?
> A. Desperate. Yes.
> Q. And so you had a conversation with Wayne Charles, you just happened to meet him in a bar; is that correct?
> A. Yeah.
> Q. Was this at the Flash Inn?
> A. No. This was at Nicky's.
> Q. Nicky's. And had you known Wayne prior to seeing him at Nicky's?
> A. Oh, yes.
> Q. You had been friends with him for a long period of time; is that correct?

---

[1] This issue was preserved for review. See, Tr. 5732.
[2] This issue was preserved for review. See, Tr. 5388
[3] This issue was preserved for review. See, Tr. 5732

2

> A. Yes.
> Q. And during that conversation he made you aware that Dante Brown might be able to get you a position with his company; correct?
> A. Yes.
> Q. And you knew Dante Brown at that time as well?
> A. Yes.
> Q. And you know -- you knew Dante Brown to be close friends with William Charles; is that correct?
> A. Yes, they considered themselves brothers.

See, Tr. 1155-1156.

> Ms. Ross further testified,
>
> Q. Now, so it's fair to say, Ms. Ross, I know this is a long time ago, but when you started working for Micros Only, you believed you were working for Dante Brown; is that correct?
> A. Correct.
> Q. And when you started working in Mount Vernon City Hall for the next however long period of time, you were under the impression that you were working for Dante Brown; is that correct?
> A. That's correct.

See, Tr. 1157.

> Q. Did Micros Only make it possible, did Dante Brown make it possible for you to show up at City Hall in order to do that work?
> A. Yes.

See, Tr. 1202.

Ms. Ross further testified that sometime after starting work at city hall, she met with Dante Brown and she thanked him for the job to which he responded "Don't fuck it up." See, Tr. 1163. Taken together with Ms. Ross's very specific and clear testimony that Mr. Charles had referred her to Dante Brown, that she believed that she was working for Mr. Brown and that Mr. Brown "made it possible" for her to be working at Mount Vernon City Hall, defense counsel argued to the jury that

3

Ms. Ross called or otherwise spoke with Dante Brown to get the job and summed up as follows:

> "[Yvonne Ross] said she was unemployed. She was looking for work.
> Remember? And what did Wayne Charles allegedly say to her?
> Call Dante. He's got a computer company.
> She calls Dante. She comes in. She gets the job.
> We'll talk about, you know, the issues relating to the
> interviews. But she gets the job because of Dante Brown. And
> how do we know that? Because she meets Dante Brown later on
> and says, hey, Dante, thanks for the job. And what does he
> say? Oh, go to Wayne Charles and thank him, it's his company?
> He doesn't say that. He says don't F it up. This is Dante
> Brown's company. And if it isn't Dante Brown's company, if it
> isn't, Gerrie Post doesn't know that. No one would know that
> unless they were in on it. In on it. Has the government given
> you any evidence of that?"

See, Tr. 5467.

Instead of disputing the defense version by commenting on lack the evidence, the prosecutor attacked defense's counsel during his rebuttal summation by claiming in so many words, that defense counsel made things up, i.e. fabricated evidence out of thin air:

> …Ms. Ross, remember, is at some club or restaurant, sees Mr.
> Charles, says I'm out of work. And he says to her, oh, there's
> some business up in -- work to be done up in Mount Vernon.
> I don't know, if he mentioned Dante Brown had the business
> or not, I don't recall off the top of my head. He tells her the
> about that. Now, what's interesting about that is what she said,
> and what Mr. Tanner said she said the conversation was. She
> said Mr. Charles told her about the business opportunity,
> the job opportunity there, and Mr. Tanner tells you that
> Wayne Charles told her to call Dante Brown.
> Well, Ms. Ross never said that. Ms. Ross never
> said that Wayne Charles told her to call Dante Brown.
> Mr. Tanner then said that Ms. Ross called Dante
> Brown. She never said that either. **That's just made up.
> That's just made up.** (Emphasis added)

See, Tr. 5623-5624.

Indeed, during the argument raised during the defense counsel's objection to the comments,

4

the Court noted that the statement was personal.

> THE COURT: And that's your argument, and Mr.
> Dember has a different argument. I understand why maybe you
> took it personally, I respect that, too. It's unfortunate
> that it got personal but --
> MR. TANNER: Oh, I want to be clear. I don't take
> it personally. I just think that it was -- it is what it
> is, it's a misrepresentation of the testimony.

See, Tr. 5733.

So, while defense counsel didn't "take it personally" it was nevertheless meant as a personal attack on defense counsel's credibility which had a substantial prejudicial effect on the defendant.

### Improper Comment on $30,000 Payment

The Government never offered any evidence as to the reason two checks[4], in the amounts $30,000 and $1,000, were written by Wayne Charles to Constance Post. Therefore, absent a connection between the allegations in the indictment of conspiracy to commit mail fraud and mail fraud, including the elements needed to prove those offenses, and the payments, the defendant moved to preclude the Government from introducing the checks into evidence.[5] Without any evidence in support of the position, the Government argued to the jury that the payments constituted payment of a bribe, a crime not charged in this indictment. Indeed, during his summation, Mr. Dember stated the following to the jury:

> **$30,000 is not a loan.** It's not a repayment of a
> loan. What it is is, well, call it what you like. **It's a
> bribe, it's a gratuity, it's a kickback.** **It's a** *thank you*.
> *Thank you* **Constance for helping me steal hundreds of thousands**

---

[4] See, GX 2007D and 2010G.
[5] See, *Defendant's Memorandum in Opposition to the Government's Supplemental Trial Memorandum*, ECF Document #108, Page 10, in which defendant moved to preclude admission of the checks pursuant to Fed.R.Evid. 403 as well as on the grounds of relevancy and the risk of jury speculation. The application was denied.

5

> **of dollars from the Mount Vernon Urban Renewal Agency and HUD.**
> *Thank you* **Constance for not making me pay back my $250,000 loan that I owed your agency.** *Thank you***.** *Thank you* because I couldn't have gotten that loan without your help, helping me to fool and defraud the Urban Renewal Agency board by lying on forms.  I couldn't have got especially that computer contract because I don't know a thing about computers and I don't even have a company.  But thanks to you I did.  And it's time for him to pay her back.  She wasn't doing this strictly for her romantic relationship.  She wanted her cut.  **That's the explanation for $30,000.**  That's why he's paying her.  **Use your common sense.** (Emphasis added).

See, Tr. 5389.

Compounding his error in asking the jury to use "common sense", absent any evidence whatsoever, to completely speculate that the checks constituted payment of a bribe, the Government in its rebuttal summation told the jury the following:

> "The last topic I'm going to turn to before I conclude is this; the $30,000 check. Mr. Tanner said it was the most important piece of evidence in this case. Well, it would be if the defendants were charged with giving and accepting a bribe, or giving and accepting a kickback. But that is not the charges here, ladies and gentlemen. The charges here is fraud.
> We don't need to prove what that $30,000 was at the end of the day. But look at those checks, that check in particular. Okay?"

See, Tr. 5642.

The prejudicial effect these comments had on the jury is unmistakable, substantial and devastating. The specific allegation that Ms. Post accepted a bribe from her co-defendant was not tempered by Mr. Dember claiming that it wasn't an element of the offense. To the contrary, he told the jury, he didn't even have to prove it, which made matters worse.

### Shifting the Burden of Proof

It was the defendant's contention throughout trial that Ms. Post's intent was not to deprive the City of Mount Vernon, its citizens and HUD of money and/or property. To the contrary, the defendant's intent was to do what she could, in the face of a Mayor's Office rife with patronage by way of jobs to unqualified persons who were family, friends or financial contributors to the mayor, to manage the MVURA effectively. To that end, through the hiring of Micros Only, vital public housing scores known as SEMAP, went up dramatically during the tenure of Micros Only and fell just as dramatically after Micros Only was no longer working for the MVURA. The defense introduced business records of the Department of Housing and Urban Development to establish not only the SEMAP scores themselves, but the temporal correlation to the work of Micros Only and millions of dollars in federal funding that was lost to the city as a result of the loss of the Section 8 Housing Program after the departure of Micros Only.[6]

The government in its rebuttal summation did not argue the scores but rather that the defense did not provide more evidence to substantiate the scores.

> Now, keep in mind, defense has absolutely no burden of proof. The Judge has said to you many times, he'll say to you again in his charge, defense doesn't have to prove a thing in this case. But, ladies and gentlemen, if you're going to claim, claim that, you know, Micros Only is responsible for the good scores and when they leave the bad scores occur, well, **you have to do more than just say, oh, look at the chart. You've got to do more than that.** You've got to explain it… And so the question I pose to you is, how on earth do we know, more importantly, how on earth do you know, that what if any of those 14 factors were affected by any of the data entry work that these Micros Only data entry people did? Who knows? It's not clear. **It's not proven.** It's not established. But it sure looks good; doesn't it? (Emphasis added).

See, Tr. 5611-5612.

---

[6] See DX P-HUD-S1, P-HUD-A, P-HUD-B, P-HUD-S2

Mr. Dember further made the implication that defense counsel was not being forthright through his not reading the HUD stipulation(s) into the record. Defense exhibits admitted into evidence as well as demonstrative charts, temporally and by other means, showed a correlation between the SEMAP scores and the employment by the city of Micros Only. It was for the jury to decide whether or not, based upon all of the evidence presented whether there was such a correlation as contended by the defense, not for the prosecutor to argue that the it was necessary for the defense to "do more" that is, provide "more" evidence, read from a stipulation, etc. in order to "prove" the correlation or other defense contentions. This clearly amounted to a shifting of the burden of proof which deprived the defendant of a fair trial.

An improper summation requires a new trial where the statements cause "substantial prejudice" to the defendant. *United States v. Modica*, 663 F.2d 1173 (2d Cir. 1981). In determining whether the misconduct rises to the level of "substantial prejudice," the Court should consider the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements. *United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989). Based upon the foregoing, the cumulative effect of the Government's improper statements to the jury created "substantial prejudice" and deprived the defendant of a fair trial, mandating reversal and a new trial. See, *United States v. Burse*, 531 F.2d 1151, 1154 (2d Cir. 1976) (conviction reversed where prosecutor's made derogatory comments about defense counsel). See also, *United States v. Friedman*, 909 F.2d 705 (2d Cir. 1990); and *United States v. Rodriguez*, 968 F.2d130 (2d Cir. 1992).

**Conclusion**

Due to the foregoing, the defendant's motion should be GRANTED.

Dated: White Plains, New York
       January 14, 2016

                                                Respectfully submitted,

                                      By: _____/s/_____

                                           Howard E. Tanner, Esq.
                                           Tanner & Ortega, L.L.P.
                                           175 Main Street
                                           Suite 800
                                           White Plains, NY 10601
                                           (914)683-5185
                                           Attorney for Defendant Constance G. Post

cc:      AUSA Andrew Dember (By ECF)
           Stephen Lewis, Esq. (By ECF)